UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

KEVIN LEWIS,

        Plaintiff,        CIVIL NO.: _____

v.

MESSERLI & KRAMER, P.A.,         **COMPLAINT**

        **JURY TRIAL DEMANDED**
        Defendant.
_____

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

3. Venue is proper in this district because the acts and transactions occurred in this district, Plaintiff resides in this district, and Defendant transacts business in this district.

## PARTIES

4. Plaintiff Kevin Lewis (hereinafter "Plaintiff"), is a natural person residing in the County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Messerli & Kramer P.A. (hereinafter "Defendant") is a law firm that acts as a "debt collector," as defined by § 1692a(6) of the FDCPA, because it regularly uses the mails to collect or attempts to collect consumer debts in the District of Minnesota from an address of 3033 Campus Drive, Suite 250, Plymouth, Minnesota 55441.

## FACTUAL SUMMARY

6. Sometime prior to November 2010, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

7. On November 4, 2010, Defendant sent Plaintiff a letter indicating that the debt owed to Capital One Bank "has been turned over to our office for collection." The letter stated that "alternate payment arrangements" would be arranged if the full amount could not be paid immediately. This correspondence also included a paragraph indicating that Plaintiff had 30 days after the receipt of the letter to contest the validity of the debt.

8. On November 19, 2010, Defendant sent Plaintiff a second letter requesting payment of the debt owed to Capital One Bank. The letter was not signed,

but indicated it was from Steve Kahn, a Collection Representative for Defendant.

9. On November 29, 2010, Defendant sent Plaintiff a final notice letter regarding the debt owed to Capital One Bank. The letter was again unsigned. The letter again indicated Steve Kahn as the sender.

10. On December 9, 2010, Plaintiff was served with a Summons and Complaint by Defendant.

11. On December 10, 2010, Plaintiff contacted Mr. Kahn and requested a copy of the original document from Capital One stating the total amount allegedly owed by Plaintiff as he contested the amount of the debt.

12. Mr. Kahn accused Plaintiff of wanting to play games to delay payment. Initially, Mr. Kahn instructed Plaintiff to borrow money from friends and relatives and to sell his car to cover the debt.

13. Ultimately, Mr. Kahn committed to speaking to someone regarding the request and assured Plaintiff that the information would be sent to Plaintiff.

14. Plaintiff and Mr. Kahn agreed at that time that Plaintiff would pay $260.00 in monthly payments until the debt was paid in full.  Plaintiff and Mr. Kahn further agreed that Plaintiff's payments would not become due until the requested documents were sent. Plaintiff stated he would wait for the requested documents before sending any payments. Mr. Kahn agreed to those terms.

15. On December 14, 2010, while awaiting the requested documents, Plaintiff

made a payment of $100.00 to Capital One through their online banking system.

16. On December 29, 2010, Defendant allegedly sent Plaintiff the documents requested. Plaintiff denies having received the requested documents.

17. On January 11, 2011, Defendant sent Plaintiff a Garnishment Exemption Notice and Notice of Intent to Levy or Garnish Earnings. This document instructed Plaintiff to complete the associated forms.

18. On January 15, 2011, Plaintiff sent Mr. Kahn a second request for the original documents from Capital One. Plaintiff included with that letter a check for $260.00 "as a show of good faith" in the hope that Defendant "will do the same." This letter indicated that Plaintiff "just received the document requesting the exemption status of my salary before my wages are to be garnished."

19. On January 25, 2011, Defendant returned Plaintiff's check for $260.00 and demanded payment of $450.00 by February 8, 2011. Defendant wrote "Please be advised that he payment plan of [$260/mo.] is no longer acceptable." Defendant continued "[o]ur client will…accept monthly payments in the amount of $450.00 until the judgment balance is paid in full." The letter cites no reasons why the agreement between Mr. Kahn and Plaintiff was rescinded. At no time did Plaintiff receive any communication nullifying the agreement made with Mr. Kahn.

20. On February 1, 2011, notice was sent to Plaintiff that a judgment had been

entered and docketed for the sum of $3,240.96.

21. On February 5, 2011, Plaintiff sent Defendant a check for $450.00 pursuant to the demand made in the January 25, 2011 letter. Accompanying this check was a letter from Plaintiff stating that Plaintiff never received the debt verification documents requested and that despite this defect in the original agreement with Mr. Kahn, Plaintiff "did attempt to honor your request by sending the [$260.00] check."

22. On February 14, 2011, The Minnesota Attorney General's Office received a letter from Defendant indicating that Plaintiff was served on December 9, 2010 and failed to respond within 20 days. This letter also indicated that on January 25, 2011, Plaintiff and Defendant agreed to monthly payments of $450.00/mo., beginning February 8, 2011 and continuing "until the judgment balance is paid." Defendant deceptively denied that it initiated a wage garnishment action against Plaintiff. The letter also fails to include the original agreement between Plaintiff and Defendant.

23. The conduct of Defendant is a violation of numerous provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f.

## Respondeat Superior Liability

24. The acts and omissions of Defendant, and/or the other debt collectors employed as agents by Defendant who communicated with Plaintiff, as

further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

25. The acts and omissions by Defendant and/or these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

26. By committing these acts and omissions against Plaintiff, Defendant and these other debt collectors were motivated to benefit their principal, Defendant.

27. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collection employees, including but not limited to violations of the FDCPA, in their attempts to collect this debt from Plaintiff.

*Summary*

28. The above-detailed conduct by Defendant was a violation of numerous and multiple provisions of the FDCPA, including but not limited to the provisions of the FDCPA identified above.

29. Plaintiff has suffered actual damages as a result of these illegal collection communications by the Defendant in the form of sleeplessness, fear of answering the phone, nervousness, depression and migraines.

30. Defendant's negligent and/or intentional acts resulted in the violation of

numerous provisions of federal law and resulted in actual damages to the Plaintiff.

## TRIAL BY JURY

31. Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

32. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

33. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

34. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

## **COUNT I.**

## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## **15 U.S.C. § 1692 et seq.**

35. for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

36. for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A); and

37. for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

MARTINEAU, GONKO & VAVRECK, PLLC

Dated: May 18, 2011

 s/ Mark L. Vavreck                                              .
Mark L. Vavreck, Esq.
Bar Number #0318619
Attorney for Plaintiff
Martineau, Gonko & Vavreck, PLLC
Designers Guild Building
401 North Third Street, Suite 600
Minneapolis, MN 55401
Telephone: (612) 659-9500
Facsimile: (612) 659-9220
mvavreck@mgvlawfirm.com